on behalf of the appellant Orilon Lopez-Solis. May it please the Court. Your Honors, the issue in this case is whether the district court was provided with sufficient clear and convincing evidence to conclude that my client's conviction, which he sustained at 16 years of age, constituted an adult conviction. Because the conviction triggered, if it were an adult conviction, triggered a significant increase under the sentencing guidelines for the 1326 offense, actually a massive increase of 16 levels, the law is clear and the government agrees it had to have been proven by clear and convincing evidence. In this case, unlike many of our cases, particularly when you look at the Taylor-type categorical analysis case like in your last one, we see charging documents, we see transcripts of the plea colloquy, we see abstracts of judgment, we see probation reports and other matters that really clarify exactly what took place in the superior court. In this case, all we were provided was with two minute orders, a minute order of a change of plea and a minute order from a sentencing hearing. And while I certainly agree with the government that there's some evidence in those minute orders that point to this possibly constituting an adult conviction, particularly the fact that the box is checked off, that there's a waiver of a jury trial. I don't think, and the evidence under the law was sufficiently clear to constitute or to prove up for the district court in the federal case clear and convincing evidence that this was an adult conviction. The forms are old. They're from 1993. As we indicated in our documents, our appeal to the court, the defense investigators were not able to find any documents in the superior court files in Los Angeles Superior Court, which tends to support a notion that these were documents that came from a sealed juvenile proceedings in state court. In fact, I suspect that these documents came from the Immigration Customs Enforcement, basically from the immigrant's A file that the government would have access to for purposes of deportation. We also point out that when Mr. Lopez was deported, after completing his sentence at the age of 25, he was not deported as an aggravated felon, which would have been the simplest and most efficacious way to deport someone because that would be an aggravated felony. But he was actually ‑‑ Let me just add, why would he have pled nolo contendere if he was tried as a juvenile? Well, you know, I think that, frankly, is one of the weakest arguments that the government makes. It's very unusual in California court. I don't speak Latin, but I believe nolo contendere means no contest. I think it's just a Latin phrase for no contest. Because California juvenile proceedings have to be understandable for juveniles, the law says, okay, we cannot use that term. We cannot use the term nolo contendere. But as the government concedes in its brief, the state juvenile, California juvenile courts allow a juvenile to enter disposition by pleading no contest. So if you look at the minute order form here, there's not a box for no contest. They just check off nolo contendere. And I could imagine these minute orders aren't filled out by a judge. They're not filled out by the attorneys or probation officers. It's usually a court clerk. And they're looking at ‑‑ they're operating off of a form. So if he entered a no contest plea, again, we don't have a transcript. We don't have a recording of this. But if he did it in an appropriate manner for juvenile court and said no contest, it's totally understandable how a clerk could enter into the minute order, check off the box that says no contest. Because the choice on that form is either no contest or guilty. Pardon me, nolo contendere or guilty. And so he checked off or she did the nolo contendere. I don't think that's strong evidence. Again, it's a rise to the clear and convincing evidence standard that increases a sentencing maximum from two years to 20. It has the 16 level enhancement, which is one of the largest ones we have under the guidelines. Additionally, the sentence was to the youth authority until age 25, which doesn't really comport with an adult conviction for an attempted murder. The punishment for attempted murder in California is 15 years to life. And so, again, juveniles are treated a little bit differently even when they're charged as an adult. But as the district court found, and Judge Whalen had been a district court judge before he was, pardon me, a superior court judge before he was a district court judge, he said, well, you know, you get transferred, you start in the youth authority and then you get transferred to serve the remainder of your sentence in the California Department of Corrections. Here, the sentence was only to the youth authority until age 25. So that doesn't comport with an adult sentence. It doesn't make sense. And the only way, really, I think you can interpret that is that it's much more consistent with a juvenile disposition. Now, we don't have to answer the question 100 percent. I mean, the burden is on the government to prove it, and I don't want to keep repeating, but clear and convincing evidence is a very high standard. It's not beyond a reasonable doubt, but it's as close as you can get to that. And I just think it was insufficient. And unless there are any questions, I would submit on the remainder of the arguments. I think that they're addressed adequately in the brief. Thank you. Thank you. Good morning. Are you Mr. Manahan? I am, Your Honor. George Manahan of the United States. May it please the Court. Mr. Manahan, I want to ask you, you know, a box check in the cost statute that must be paid for trial. But no matter what the circumstances are, Mr. Davis Cox believes that Cox would argue with the ownership of case, that the FQJ, which is consistent with the Supreme Court juvenile division. Yes, Your Honor, he made that argument to the district court. You know, it was speculation whether Jay stands for juvenile or not. But regardless of that fact, that is not indicative of whether or not he's charged an adult. Well, I mean, Jay is technically left in the alphabet. I don't know if it just happens to be the Tenth Court, but even if it does stand for juvenile, that is not dispositive whatsoever of whether or not he's charged an adult. Is the record checking out? No, Your Honor. The United States met its burden of proof, proving that Mr. Lopez was charged an adult through other means. I'm trying to figure out why the record is so limited in this context. I mean, it could be that it's enough, especially in light of the judge's knowledge and experience at the state level. But was there a rush to get the sentencing done? Could you have gotten more records? There was not. And I believe requests were made of the California Superior Court for more records, and these were the ones that were given. Hold on just a second. Were you the prosecutor below? Was I a prosecutor for long? Were you the prosecutor in the case below? I was. Okay. When you say, I believe that there was a request made, was there a request made, did you make it? Right. I made a request to our liaisons, our, you know, the agents who work with our office to provide me documents from the Superior Court, and these were the documents that I was provided. And likely the defense counsel is right. They came from the A file, which I believe. And why didn't they come from a court file, from a Superior Court file? How is that? I'm just, it's interesting to me, almost a little remarkable, that we don't, you don't have this individual's prior judgment of conviction in terms of, that specifically sets out, you know, whether or not this was an adult conviction. You don't have that? I believe that this, that page 37 was the best indicator of whether or not. But I still, you still aren't answering my question, and I'm just, I'm just trying to figure out what happened here. Why isn't there more documents to support what occurred here, either disposition or conviction? And I'm having trouble understanding why. Okay. I asked the liaisons to provide me with all the documents they could to prove up this conviction. These are the ones they gave me. It is not uncommon in my experience that, especially Los Angeles California Superior Court, we have difficulty obtaining as many conviction documents as we do from other courts in the California Superior Court system. And so it did not surprise me that when they said these are the documents we were able to, we obtained. And, but you think, you submit that it's conclusive that he was convicted as an adult. I think it clearly meets the government's burden. It clearly met the government's burden at the district court level. Of clear and convincing evidence. Of clear and convincing evidence. And this court is tasked with whether the district court made clear error in making that factual determination. Right. And so what is it? Give me your best argument. What is it that you're relying on that the district court, in terms of the district court's finding, that support the 16-level upward adjustment? The number of indicia that it was an adult conviction would include the Superior Court judge who, I mean the former Superior Court judge said, hey, these are the forms that are used in adult court, not the forms that are used when you're charged as a juvenile. And that's consistent with the fact that on these adult forms, you have things like is he guilty or no, or is he pleading guilty or no of contendering, which are not pleadings that juveniles could use, but rather pleadings that only people who are charged as adults could use. Did somebody produce a juvenile court file or any kind of juvenile pleading to compare it to? Was it necessary because of the judge's experience? Right. The judge said, I know which forms are used when you're charged as a juvenile. These are not them. These are the ones that are used when you're charged as an adult. I'm just curious, and remain calm, but if we remanded this back and said, hey, give us another, your best effort maybe to get more documents, what do you think would happen? Would you be able to produce more documents? I don't know. I would suppose I would make another request for more documents. How different from this one? I'm just trying to see if that would be, are you submitting, suggesting to the court that that would be futile or not? I'm suggesting to the court that it's likely to be futile, but I can't say for 100%. But more importantly. Was there anything else you would be able to do in terms of your request? I mean, somewhat familiar myself. I mean, couldn't you pick up the phone and say, and talk to somebody instead of having your liaison and say, we really need this. Is that not possible? I'm just trying to figure out what all efforts happened, and could there have been more to produce more paper? I'm not sure that we need it. That's why I want you to remain calm, but I just want to see what your response is. The reason I rely on my liaisons in cases like this is because in Southern District, California, thousands of 1326 cases are charged per year. We use liaisons because they develop an expertise in obtaining conviction documents that we need in these thousands of cases. But the liaison here seemed to go to the A file instead of to the Superior Court file, and that's based on what I've heard and read. Again, I don't know if that's true. I suspect it is. That would be consistent. And so the expert that you're relying on didn't go to the direct source, maybe because they knew the direct source was going to be too overwhelming for them. What I'm guessing happened is that when they made their request, they got the same forms that they already had in the A file, although I don't know that for sure. Well, that's kind of what it would indicate. Look, I spent a few years on the Superior Court myself, and things change. And when you talk about a liaison, are you talking about, what, an FBI agent? What is a liaison? We have a liaison. Is that somebody that you use in the office to go track down stuff? Absolutely. Okay. Now, you see, the best way to get a document from the Superior Court, based on my experience, recent experience, would be, especially if you're looking for old material, would be to have, I don't know if this is a good way to do it or not, but the way it works for me is that I ask the clerk of our court to deal directly with the clerk of the Superior Court, and they work it out. Well, they work it out. And they have a mutual request to go back and forth. When you say a liaison, I don't know who it is the liaison talks to. And it seems to me here the liaison looks in the Federal file and pulls out what's there at the time, which, to me, doesn't seem very sufficient. To show, I mean, if it's here, here you've got a juvenile that's involved in a very serious crime. And the juvenile receives a sentence. And he says to me, and that sentence allows him to be released when he's 25 years of age. He didn't go from release in the CYA into the regular adult prison population, did he? And I don't see anything here that shows he was trying to go to jail. You know, no competitive and no contest means absolutely the same thing. I never studied Latin either. So all you have to do is look at the English roots here. And that's what I wish I had taken in high school, but I didn't do that. And so I just think the government's case here is very, very, very, very purposeful. And when you tell us why it seemed this, why it seemed that, you don't really know. You don't really know exactly what your liaison did. Again, Your Honor, no, I don't. But that is not the point. But let me tell you this. At one time, during a very, very, very federal trial, I was involved in a youth settlement when I was on the district court. And the government needed to show this because it came up, the document that was introduced into evidence did not contain a date. Even though it came out of the official file on the state attorney's office, it didn't have a date. That date is crucial on whether the statute exists. And so there was a newspaper, there was a sentinel, and it talked about a certain event that occurred in a certain state. So when I pointed out that there was no date on it, well, it must have been cut off on the top of the sheet. Well, then you bring the original and why don't you send one of the investigators, we have a lot of investigators on this case, over to the newspaper and newspapers keep all these things in a moment and you can get an original copy. And so we come back the next day. This was Friday. We come back on Tuesday. And so that's the report from the government. The report is when we send somebody down to the liaison down to the newspaper office and they go in there and they ask the general, do you keep all these reports in? And she said, ah, we don't keep that stuff, too much of it. So the court does not know they don't have it, which is very hard to believe. And then the defense attorney, he types that. And he said, oh, I think I've got the problem solved. So he comes up. Well, he went over there. He was his own liaison. He went over there and he brought an original copy of the newspaper. It was right there. Right there. And the result was one of these counts was dismissed because the statute is wrong. And then I found out later that the chief investigating officer, the guy that was head of this group, was himself aware that the evidence that was coming in was on the date of this document where the date was removed, you know, cut off, was false. So you just can't go send a liaison down to find things that work too well. And that worked too well in my experience. Thank you. Thank you, Your Honor. I'm just trying to teach you something. Thank you. Don't assume anything. All right. Thank you very much. Do you need a minute, two minutes? I think you had more, but okay. I just wanted to point out a couple of things. One is that from practicing in state and federal court, I certainly agree with Judge Pregerson that forms change a lot and that counties are remarkably different. As a federal practitioner, I'm more likely to be up on the procedures and the practices going to any federal district court in the country than going from San Diego County to Orange County or L.A. County. Everybody's procedures are different. And, again, we're going back to 1992 and 1993 on these forms. And I think it's not necessarily appropriate for Judge Whalen to step out of his role as the judicial officer and sort of serve as an expert witness with regard to the interpreting forms from a court where he never practiced in. Secondly, the government was given an opportunity at the initial sentencing, at the sentencing hearing, to provide more documentation. It's on page 15 of the excerpt of records. And the prosecutor indicated that he spoke with a probation officer this morning who would be happy to provide additional documentation, but the prosecutor felt that was not necessary and that the court could rule right then. So the government did have an opportunity. I don't mean to cast aspersions in any way, but I think it reflects, unfortunately, how busy we are in the Southern District of Californians. And we process a lot of cases, and, unfortunately, not everyone gets handled the way it should. But the government had the burden. It didn't meet it. I'd ask the court to remand the case for resentencing. All right. Thank you very much. Thank you for your argument here today. And the case is now submitted. You all are excused. We're ready to proceed with the next case. There's two cases, three cases that have been submitted on the briefs. That's Phil Millman v. Jan English, Ian McCowan v. City of Fontana, and Protective Life Insurance Company v. Robert Mosier. So the last case on this morning's docket is ExxonMobil Oil Corporation v. Gazprom. You may come forward.
judges: Conlon, Pregerson, Murguia